## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

                 **Plaintiff,**                              **CaseNo.: 21-20665**

**-v-**

                                             **Hon. TERRENCE G. BERG**

**D-2 SAMANTHA GILLIAM,**

                 **Defendant.**

  **_____/**


## DEFENDANT SAMANTHA GILLIAM'S SENTENCING MEMORANDUM

## AND REQUEST FOR A VARIANCE FROM THE GUIDELINES

Defendant SAMANTHA GILLIAM, by and through her attorney, MARIA MANNARINO, submits the following memorandum  for this Honorable Court's consideration regarding issues relevant to sentencing.

In October 2021, co-defendant Quiyemabi Summerlin, a registered sex offender following a 2002 conviction for Criminal Sexual Conduct, was charged by way of a criminal complaint with violations of 18 USC § 1591 (Sex Trafficking

Using Force, Fraud or Coercion) 21 USC § 841 (Distribution of a Controlled Substance); 21 USC § 856 (Maintaining a Drug Premise) and 18 USC §922g (Felon in Possession of a Firearm). The allegations were that a number of women, at various times from July 2019 through October 2022, made allegations that, at a number of different locations and on different dates, Mr. Summerlin trafficked them, assaulted them, and provided them with drugs. Mr. Summerlin was indicted in November 2021, and charged with Counts 1-4, Sex Trafficking, based on four separate victim allegations of conduct by Mr. Summerlin in October 2019, February 2020, October 2020 and October 2021. The indictment also charged Mr. Summerlin with Counts 5 and 6:  Maintaining a Drug Premises and Felon in Possession of a Firearm.

Ms. Gilliam had first met Ms. Summerlin in 2018.  They bumped into each other at a gas station, and he offered to pump her gas.  They had not known each other very long, or very well, when he first moved into her home.  In the early stages of their relationship, Ms. Gilliam found Mr. Summerlin to be kind, loving and attentive to her. She was working long and difficult hours, while trying to take care of her children and her home, and Mr. Summerlin was good to her, rubbed her feet, helped her daughter with her homework, and professed his love and devotion. However, during the course of their relationship, Mr. Summerlin began showing signs of manipulative, controlling and abusive behavior.  If Ms. Gilliam tried to

2

end the relationship, he would beat her, sexually assault her, or vandalize her property.  On more than one occasion, Ms. Gilliam called the police. But, Mr. Summerlin would always come back, professing his love and promising that he changed his ways. And Ms. Gilliam wanted to believe him.

At the time the allegations first came to light, Ms. Gilliam was Summerlin's girlfriend and owned the home where some of the acts allegedly took place. When she was originally approached by the Government and interviewed, she was cooperative, but was understandably reluctant to testify against Summerlin. Mr. Summerlin was extremely manipulative and often abusive, and Ms. Gilliam was extremely vulnerable.

Ms. Gilliam is a survivor of a horrific childhood, marked by poverty, violence, sexual abuse, and the mental illness of family members, including her mother. Ms. Gilliam has also been diagnosed with mental health challenges, as well as having recently been diagnosed with cervical cancer that has resulted in surgeries and chemotherapy.  But, because of her reluctance, the Government chose to charge Ms. Gilliam, and she was charged in a criminal complaint in February 2022 with Conspiracy to Engage in Sex Trafficking, and Maintaining a Drug House.  Ms. Gilliam was 40 years old, had no prior record, and was working full-time at an auto plant. She also had a young-adult son, and a teenage daughter living in the house.  Ms. Gilliam's work schedule kept her away from the home for

3

long hours, 6 to 7 days a week.  While she has acknowledged that at some point she became aware of what Mr. Summerlin was doing in the basement of her home, she also took steps to stop it.  She, on more than one occasion, called the police to remove the girls and their clients from her home.

The allegations in the original complaint were that she was aware that Mr. Summerlin was trafficking women in the basement of her home. In April 2022, Ms. Gilliam was charged by way of 12-count superseding indictment with four counts: Conspiracy to Engage in Sex Trafficking by Force, Fraud or Coercion, and three substantive counts of Trafficking.  In May of 2023, the Government obtained a Second Superseding Indictment, and charged Ms. Gilliam with six separate counts: Conspiracy to Engage in Sex Trafficking, four substantive counts of Sex Trafficking (which carry a mandatory minimum sentence of 180 months), and Maintaining a Drug House.

Ms. Gilliam ultimately accepted the Government's offer, and entered a plea on April 30, 2024.  The Rule 11 agreement provided for a dismissal of the four counts that carried a mandatory minimum sentence of 180 months, in exchange for a plea to the Conspiracy count, and Maintaining a Drug House.  The Government agreed that the sentence would not exceed the bottom of the guidelines, which the parties anticipated would be 108-135 months.  The probation department, however, has recommended that the Court find Ms. Gilliam's guidelines to be 168-210

4

months, based on their belief that the offense level should be increased 4 levels (from 34 to 38) based on USSG §3D1.4.  Ms. Gilliam, through counsel, disagrees with the calculation of the probation department.

Ms. Gilliam respectfully requests that this Court impose a sentence below the guideline range. The Defense believes that the nature and circumstances of this case, as well as those factors specifically enumerated in 18 USC §3553(a) support a variance from the advisory guideline range. Such a sentence would address the principal of appropriate punishment, and honor the overriding mandate that a sentence be "sufficient, but not greater than necessary."

### SentencingGuidelines

"[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors." *Nelson v. United States*, 555 U.S.  350, 351 (2009). "The guidelines are not only *not* mandatory on sentencing courts; they are also *not* to be presumed reasonable." Id at 352; *Gall v. United States*, 552 U.S. 38, 128S.Ct. 586, 602 (2007);  *Kimbrough  v. United States*, 552 U.S. 85 (2007). The guidelines are an "initial benchmark" or "starting point," *Gall* at 49, but there is no "thumb on the scale for the guideline range." *United States v. Sachsenmaier*,  491 F.3d  680, 685 (7th Cir. 2007). In determining a sentence, the sentencing court must "consider every convicted person as an individual and every case as a unique study

5

in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 US at 52.

## I.     The 3553(a) Factors

In addition to the guidelines, §3553(a) directs courts to consider the following factors in sentencing:  (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to (a) reflect the seriousness of the offense, promote respect for the law and provide just punishment; (b) protect the public; (c) afford deterrence; and (d) provide the defendant educational or vocational training, medical care or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentence disparities among defendants with similar records and criminal conduct; and (5) the need to provide restitution to victims. 18 USC §3553(a)(1-5).

## II.     Request for reasonable sentence

Currently, the lodestar of sentencing is substantive reasonableness. *Gall*, 552 U.S. at 51. Proportionality in sentencing, or reasonableness, is an important consideration. A harsh sentence, while allowable under the guidelines, offends the principal of proportionality in that such a sentence would not be proportional to the offense. United States courts have started to place proportionality in sentencing in a place of greater importance than rote application of guidelines. The Guidelines

6

are not the sole, nor even the first among the factors that Congress has commanded the courts to apply in section 3553(a). The Court may not presume that the Guidelines range is reasonable and must make an individualized assessment based on the facts presented. Thus, district courts are now permitted, indeed, directed to consider whether the Sentencing Commission's underlying policies, and/or their application to the facts of a

particular case, result in a sentence that is unreasonably high. *United States v. Kimbrough*, 552 U.S. 85, 128 S.Ct. 558, 575 (2007).

As the Court is well aware, Mr. Summerlin took advantage of vulnerable women -  young, drug addicted sex workers -  in order to use and exploit them for his own purposes.

He also took advantage of Ms. Gilliam, and exploited her vulnerabilities for his own purposes.

Ms. Gilliam has had her share of life challenges. She was born into a dysfunctional family marked by poverty and drug abuse and mental illness.  She was a victim of sexual abuse as a child and has carried the scars with her all her life.  But, despite the challenges, she has persevered, and has worked consistently and provided a stable home to her children.  She has also taken in and helped raise her daughter's friend, who had no home.  But, while all outward appearances indicate Ms. Gilliam may have risen above and beyond her challenges, she carries

7

with her a tremendous desire for support, love and stability.  And like many other victims of horrific abuse, she often looks for these things in all the wrong places. Without a doubt, Mr. Summerlin was definitely the "wrong place."

During the pendency of these proceedings, Ms. Gilliam was diagnosed with cervical cancer.  She has undergone surgery and follow-up, debilitating chemotherapy treatment.  She has also been diagnosed with mental health issues, no-doubt at least partly hereditary, but to her credit, has voluntarily undergone evaluations and follow-up treatment.  She is making tremendous progress, and has gained valuable insight into how, and why, she has made the choices she has made.  She wants very much to do better, be better, in order to be a good role model to her daughter and ward.

An evaluation by Dr. William Nixon found:

*This is a very sad story of a woman who not only has had to endure the horror of her own childhood, adolescence, and adulthood physical and sexual abuse, but now also has to endure being caught-up in the web of the criminal conduct of another man. From careful, thorough and at times painful clinical examination of this patient's personal history, there is no doubt that she was as a child and teenager and young adult caught in a home and family environment of great psychopathology. The level and depth of sexual, psychological, and physical abuse she has suffered throughout her lifetime, from childhood far into adulthood, is well-beyond unfathomably inhumane. And the fact that she now continues to be caught in the web of the sins of her parents and those who took advantage of her as a child and adolescence by the self-fulfilling repetition of her psychopathology is clear evidence of the fact that even as an adult she can be made to be a victim of yet another psychopath, this time named "Q."*

*In sum, it is the clinical finding of this Expert Examiner that the patient*

8

*is now so psychologically programmed to be her own worst enemy by time and time again unconsciously putting herself in a position of being taken advantage of by yet another man of terrible character pathology when all she has ever wanted is to beloved and taken care of.*

Ms. Gilliam's daughter is a senior in high school, and will be graduating in the spring.  They have an extremely close bond, and Ms. Gilliam very much would like to continue to be present and supportive of her daughter, and guide her in the coming months as she begins the college application process.

**III.    Conclusion**

Ms. Gilliam has acknowledged her participation in the instant case and seeks a sentence that is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Therefore, based upon the directive that "the court shall impose a sentence sufficient but not greater than necessary" to comply with 18 USC Sec. 3553(a), Ms. Gilliam respectfully requests that the Court consider a non-custodial sentence.

RespectfullySubmitted:

*/s/MariaMannarino*

_____
Maria Mannarino
248-761-7347
mmannarino@comcast.net

9

Certification of Service

Attorney Maria Mannarino hereby certifies that on November 14, 2024 she filed a copy of the foregoing with the Court with the ECF system, which will forward a copy to all attorneys of record.

/s/MariaMannarino